128 135
142 505

ROSE, *Guardian, Appellant,* v. KANSAS CITY *et al.*

Division Two, April 12, 1895.

1. **Highway, Opening of:** REGULARITY OF PROCEEDINGS. Regularity of proceedings in the county court of Jackson county for the opening of a boulevard begun at the regular May term of 1884 and adjourned to June, the June session being held at Kansas City and the others at Independence considered and sustained.

2. ———: WIDTH: VALIDITY OF ORDER. An order establishing a highway is not void for failing to designate its width, where it is shown by the petition and other papers contained in the record and mentioned in the order.

3. ——: ——: COMMISSIONER'S REPORT. The report of the road commissioner in this case *held* not to show that he had laid out a highway of less width than that called for by the order of the court.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*George F. Ballingal* and *Botsford & Williams* for appellant.

(1) The county court of Jackson county had no power to hold regular monthly terms of said court alternately at Kansas City and Independence, and the proceedings had in said court at the June and July terms thereof, in the appointment of commissioners to assess damages for the opening of Grand boulevard—over the lands of Robert Hunter, mentioned in the petition—and the filing of their report thereon, were without warrant or authority in law, and such appointment and report were and are void. Sess. Acts, 1873, p. 155, sec. 5; Sess. Acts, 1877, pp. 227, 228, secs. 14, 15, 16 and 17; 1 R. S. 1879, sec. 1205, *et seq*; Sess. Acts, 1887, sec. 1, p. 157. (2) Grand boulevard was not established by the county court of Jackson county as a public highway over the lands mentioned in the petition in accordance with the requirements of the statutes in force at the time, and the proceedings had in said court for the establishment of such boulevard, subsequent to the filing and notice of the petition therefor, were void for want of jurisdiction. Sess. Acts, 1881, sec. 5, pp, 194–195; Sess. Acts, 1883, secs. 5, 7, 8–9, pp. 159–160; *Railway Co. v. Young*, 96 Mo. 39 and cases cited; *Lingo v. Burford*, 112 Mo. 155; *Ziebold v. Foster*, 118 Mo. 349; *State v. Horn*, 34 Kan. 556; *Higgins v. Randall*, 13 Mo. 205. And an order directing the opening of a public highway without fix-

ing its width is void.   *Erwin v. Fulk,* 94 Ind. 235;  *Re Lackawana Road,* 112 Pa. St. 212.

*Frank F. Rozzelle, Frank P. Walsh* and *Clarence S. Palmer* for Kansas City, and *Karnes, Holmes & Krauthoff* for Grand Avenue Railway Company, respondents.

(1) "The (county) court had jurisdiction of the subject, and the propriety and regularity of its action is to be presumed, until the contrary appears." *State ex rel. v. Weatherby,* 45 Mo. 17; *State v. Evans,* 83 Mo. 319.   (2) If there was a law in force authorizing regular terms of the county court to be held on the first Mondays in June and July, 1884, then the proceedings in June and July were had at the regular June and July terms respectively; but if there was no such law (and that may be conceded in this case), then the proceedings had in in June and July were, as the result of the several adjournments, all had and made at the adjourned June and July terms, 1884.   This is clear, if for no other reason, because such adjourned terms were expressly authorized by the following statute then in force.   "Each county court may hold adjourned terms whenever it may become necessary for the transaction of its business."   1 R. S. 1879, p. 214, sec. 1208.   An adjourned term is a continuance of the regular term.   *Fannon v. Plummer,* 30 Mo. App. 25.   Such is the rule wherever the question has arisen and is supported by no less an authority than Chief Justice MARSHALL in the supreme court of the United States.   *Mechanics' Bank v. Withers,* 6 Wheat. 106; *Van Dyke v. State,* 22 Ala. 57; *Leib v. Commonwealth,* 9 Watts, 200; *Harris v. Gest,* 4 Ohio St. 469; *People v. Ah Ying,* 42 Cal. 18, 20.   (3) There was no requirement in the road law requiring the width of the highway to be designated in the order

establishing the road.   Besides, the petition and records sufficiently indicate the width.   (4) There is no merit in plaintiff's case and the judgment should be affirmed.

GANTT, P. J.—This is an action of ejectment for a strip of land now known as a part of Grand avenue in Kansas City.   The cause was tried in the circuit court of Jackson county on an agreed statement of facts and resulted in a judgment for defendants.

Prior to its incorporation into the city it was known as Grand Avenue boulevard and was opened by proceedings had in the county court of Jackson county, begun at the regular May term, 1884, of said court, and, unless these proceedings were void for want of jurisdiction in the county court, the judgment of the circuit court must be affirmed.

I.   The petition for the establishment of the road stated every jurisdictional fact, was signed by the requisite number of freeholders, and due notice of the application was given and shown to the satisfaction of the county court, and it thereby obtained jurisdiction to establish said proposed road.   It, is, however, insisted that the county court of Jackson county had no power to hold regular monthly terms of said court alternately at Kansas City and Independence, and that the proceedings had in said court at the June and July terms thereof, in 1884, in the appointment of commissioners to assess damages for the opening of Grand Avenue boulevard over the lands of Robert Hunter, mentioned in the petition, and the filing of their report thereon, were without warrant or authority in law, and that said appointment and report, not being at a term authorized by law, were and are void.   To appreciate the force of this contention reference must be had to

the legislation on the subject of county courts in Jackson county.

By section 5 of an act of the general assembly, approved March 21, 1873, the terms of the county court of Jackson county were required to be held thereafter, alternately at Kansas City and Independence; and each monthly term shall commence on the first Monday of each month, and special terms may be called at either of said places in the same manner as now provided by law regulating county courts. Session Acts, 1873, p. 155, sec. 5.

By the act of the general assembly approved April 27, 1877, entitled "An act to provide for a uniform system of county courts," and repealing all acts and parts of acts inconsistent therewith, it is provided that four terms of the county court shall be held in each county annually, at the place of holding courts therein, commencing on the first Monday in February, May, August and November; that the county courts may provide for adjourned terms whenever it may become necessary for the transaction of business; may order special terms, and may alter the time for holding their stated terms, giving notice thereof in such manner as to them shall seem expedient. Session Acts, 1877, sections 14, 15, 16 and 17, pp. 227, 228. These provisions of the act of 1877 are carried forward and contained in the revision of 1879. 1 R. S. 1879, secs. 1205, et seq.

By the provision of the act of the general assembly approved March 15, 1887, section 1205, of the Revised Statutes of 1879, is amended by adding a proviso thereto: "That in counties now containing or that may hereafter contain seventy-five thousand or more inhabitants, and where county courts are now or may hereafter be held at more places than one, and at other places than the county seat, the terms of said court shall be held monthly and alternatively at the county seat and such

other places as may be provided for the holding of such court, and each monthly term shall commence on the first Monday in each month." There is an emergency clause in said act, stating that four terms of the county court in counties containing seventy-five thousand or more inhabitants are insufficient to transact the ordinary business of such court, and of necessity an emergency exists for the immediate taking effect of said act. Session Acts, 1887, page 157.

From the foregoing citation of the laws of this state concerning terms of the county courts thereof, it is argued by appellant that the special act of March 21, 1873, authorizing monthly terms of the county court of Jackson county to be held alternately at Kansas City and Independence, was repealed by the general act of April 27, 1877, establishing a uniform system of county courts, and that thereafter only four regular terms of said county court could be held in said county, on the first Monday in February, May, August and November in each year, and that the county court of Jackson county had no authority in law to hold monthly terms of said court alternately at Kansas City and Independence thereafter, until the adoption of the act of March 15, 1887, and that it must therefore follow that the monthly June term of said court, held at Kansas City in June, 1884, and the monthly July term of said court, held at Independence in July, 1884, were held by said court without any authority of law therefor, and that all proceedings of said court at such unauthorized terms were null and void.

The agreed statement of facts contains all the orders of adjournment of the county court from the convening of the May term, 1884, up to the commencement of the regular August term, 1884. From these orders it appears that on May 20, 1884, the court was adjourned to the first Monday in June, 1884. Regular

adjournments were then had from day to day and time to time until June 17, 1884. On June 17, this order was made: "On motion the court adjourned until Monday, the seventh day of July, A. D. 1884." There is no break in the continuity of the sessions of the court from the beginning of the May term, 1884, to the August term, 1884.

Under this state of facts, it is evident that, if the act of 1873 was not repealed, as was held in *State ex rel. v. Vaile*, 122 Mo. 42, lawful sessions of the court were held on the first Mondays in June and July, 1884, and its orders and judgments were valid; but, if the act of 1873 was repealed by the law of 1877, it can not admit of question any longer in this state that the several adjourned sessions were but continuances of the regular May term. *Higgins v. Ransdall*, 13 Mo. 205; *State ex rel. v. Railroad*, 101 Mo. 136; *Fannon v. Plummer*, 30 Mo. App. 25.

Was it competent for that court then, at the May term, 1884, to appoint the commissioners to assess the damages, and for them to file their report at the May term? The statutes governing in such cases will be found in the Session Acts or Laws of 1883, p. 157, and following.

As already said, a proper petition with the requisite allegations and proper number of petitioners was filed on May 5, 1884, the first day of the regular May term and proof of notice made, and no remonstrance filed. Thereupon the court ordered the road commissioner to "view, survey and mark out such road and make report thereof at the next term thereafter." Sec. 7, p. 159, Laws, 1883. On June 3, 1884, the road commissioner, O'Flaherty, submitted his report and it was ordered filed. This he was authorized by the statute to do. Sec. 7, *supra*. Thereupon the court appointed three commissioners to assess the damages of all those

persons through whose lands the proposed road would
run, and who had not relinquished the right of way.
It was entirely competent for the court to do this at
the same term at which the petition was presented and
proof of notice made.   While there is no requirement
of the statute that the court should await the filing of
the road commissioner's report before appointing com-
missioners to assess damages, it, nevertheless, did
await the filing of that report before doing so.

It appeared from the road commissioner's report,
etc., that certain persons had refused to relinquish the
right of way, and the county court, being then in
session, proceeded under the provisions of the next
section of the statute, on June 3, 1884, to appoint a
board of three commissioners to assess the damages,
etc.   As the statute further provides that this board of
three commissioners "shall return, under oath, to the
county clerk, on or before the first day of the next
regular term of the court thereafter, such assessment
of damages," etc., it follows necessarily that said
return was duly and properly made on July 7, 1884.
Session Acts, 1883, p. 159, sec. 8.

At this point, in order that interested parties
might have an opportunity to be heard on the ques-
tion of damages, the statute for the first time contem-
plates a halt in the progress of the proceedings, as
indicated by the provision "that the report of the com-
missioners assessing damages may be reviewed by the
county court on written exceptions filed therein, or
with the clerk thereof in vacation, by any party inter-
ested, *on or before the first day of the next regular term
after the filing of said report and assessment of damages.*"
Session Acts, 1883, p. 160, sec. 9.

Such, in fact, was the course of procedure actually
followed in this particular case.   The report remained
on file without further action from July 7, until August

11, 1884, a week after the first day of the next regular or August term, 1884, when the parties in interest having failed to file any exceptions, and the amount of damages assessed having been paid into court for the respective owners, the final order establishing the public highway was duly made. Session Acts, 1883, pp. 159, 160, secs. 8, 9.

In so far, then, as the validity of these proceedings has been assailed on the ground that several orders were made at times and terms unauthorized by law, the objections are wholly untenable.

II.   It is next urged that that order of the county court establishing Grand avenue boulevard as a public highway is void because it fails to designate the width of the road to be established.   The petition prayed for the establishment of a road or boulevard ninety-nine feet in width; the petition is spread at length upon the record and incorporated into its order "that the road commissioner survey and mark out the above proposed road."   The commissioner reported that he "surveyed a road as prayed for by J. V. C. Karnes *et al.*," and that his survey was "of said road as described in said petition."   Among other papers on file are the relinquishments of rights of way.   These all designate the right of way as ninety-nine feet, and refer to a plat filed by the road commissioner with his report in which he fully describes the road as ninety-nine feet wide. This plat was lost when this cause was tried.   Had this plat been produced it must have established of itself a road ninety-nine feet wide, but the other orders taken with the record sufficiently establish the width to be ninety-nine feet.

But it is contended further that the report shows the commissioner laid out a road only seventy-two feet in width.   The road commissioner reported: "To make the road practical as a good driving road, a stone arch

culvert will be required near the beginning, and one culvert will have to be extended near Springfield avenue. The roadway will have to be widened and reduced to a practical grade, which is marked on a profile, which is herewith attached and made a part of this report. The amount of the money required for this purpose will be in round numbers $43,000. This amount includes grading, masonry and macadamizing; road to be seventy-two feet in the clear, and macadamizing twenty-four feet in the center of the roadway, which will leave twenty-four feet on each side for a common drive. * * * By the expenditure of the above amount of money in reducing the grade and in widening the roadway to seventy-two feet in width, and in macadamizing twenty-four feet of the center of the roadway with an average depth of twelve inches of pure macadam, laid in three courses and well rolled with a six-ton roller, public travel will be greatly benefited, and the interests of the interstate fair will be promoted thereby."

Obviously the commissioner meant by the word "roadway," that portion to be devoted to travel for vehicles; that part should be graded seventy-two feet in the clear with twenty-four feet of macadam in the center. The designation of a portion for such a purpose was not intended as a recommendation to change the width of the road as prayed for, but merely to advise the court of his estimates of the cost and plan of the highway, leaving thirteen and one half feet on each side for sidewalks between Kansas City and Westport. The objection of uncertainty in the width is not sustained.

As the instructions only prayed for judgment upon the facts, they present nothing for review. The judgment was for the right party, and it is affirmed. BURGESS and SHERWOOD, JJ., concur.